IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DWAYNE X. CROSS, #282574, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:23-cv-01051 |
| | ) Judge Trauger |
| WARDEN VAN TELL, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Dwayne Cross, an inmate of the Trousdale Turner Correctional Complex (TTCC), filed a pro se civil rights complaint (Doc. No. 1, "the Complaint") and—after twice having checks returned because they were drawn in incorrect amounts—ultimately succeeded in paying the full filing fee. (Doc. No. 7.)

The Complaint is now before the court for an initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. INITIAL REVIEW

**A. Legal Standard**

In cases filed by prisoners against government officials, the court must review and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A.

To determine whether the Complaint states a claim upon which relief may be granted, the court reviews for whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

The plaintiff filed this action under 42 U.S.C. § 1983, which authorizes a federal suit against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. Accordingly, the Complaint must plausibly allege: (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Allegations and Claims**

The plaintiff alleges that, on two dates in 2023, "the nation of Islam was denied the right to have a religious feast" at TTCC. (Doc. No. 1 at 4.) The feasts denied were the "Eid Feast" and the "Saviours' Day Feast." (*Id.*; Doc. No. 1-1 at 3.) The plaintiff alleges that the denial of these celebratory meals was not based on safety or security concerns (Doc. No. 1-1 at 2–5); that it deprived the plaintiff of an "opportunity afforded other fellow prisoners who adhere to conventional religious precepts" (*id.* at 4); and that it therefore violated his rights under the Free Exercise and Establishment Clauses of the First Amendment, as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA). (*Id.* at 2–5.)

2

The plaintiff also alleges that his constitutional rights were violated when Job Coordinator Blackwell acted with deliberate indifference to his "job needs" by denying him a prison job and, therefore, the money he needs "to function." (Doc. No. 1-1 at 6–8.)

The Complaint names as defendants the TTCC Warden, Assistant Warden Norman, Chaplains Fletcher and Beaver, and Job Coordinator Blackwell. (Doc. No. 1 at 1–2.) It seeks injunctive relief and damages. (*Id.* at 4.)

## C. Analysis

First, with respect to the claimed denial of a prison job by Job Coordinator Blackwell, this claim is mis-joined to the plaintiff's religious-freedom claims and, in any event, fails to establish any plausible grounds for finding a constitutional violation. Put simply, the rules governing joinder of claims and parties, Fed. R. Civ. P. 18, 20, dictate that "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Tolbert v. Tennessee*, No. 2:17-cv-2137-STA-egb, 2017 WL 4324541, at *2 (W.D. Tenn. Sept. 28, 2017) (collecting circuit court cases and explaining that the "impulse toward entertaining the broadest scope of action" does not "provide a plaintiff a free license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated"). While the court would not typically dismiss a mis-joined claim upon first identifying it as such, in this case the plaintiff's job-related claim is not simply mis-joined—it also fails to state a claim upon which relief can be granted under Section 1983.

The plaintiff asserts his right to a prison job under the Fourteenth Amendment's Due Process Clause, claiming "a fundamental right to liberty, which includes the right to be free from the unnecessary and wanton infliction of pain" that results from an inability to work and earn a wage. (Doc. No. 1-1 at 6.) But "[t]he Sixth Circuit consistently has found that prisoners have no

3

constitutionally protected liberty interest in prison employment under the Fourteenth Amendment," *Perry v. Horton*, No. 2:18-cv-200, 2019 WL 311796, at *6 (W.D. Mich. Jan. 24, 2019) (citing, *e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)), nor any property right to a job or to wages for work they perform. *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (citations omitted). "Rather, prison administrators may assign inmates jobs and wages at their discretion." *Vick v. Core Civic*, 329 F. Supp. 3d 426, 451 (M.D. Tenn. 2018) (citing cases). Accordingly, the plaintiff's claim against defendant Blackwell concerning deprivation of prison employment will be dismissed.

The court now turns to the claims against the remaining defendants based on the plaintiff's religious freedoms. Prisoners have a First Amendment right to practice their religious beliefs and must be provided "reasonable opportunities" to do so. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). The First Amendment's Free Exercise Clause protects an inmate's pursuit of "sincerely held" religious beliefs and practices from infringement by prison authorities, *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019), and its Establishment Clause prevents prison policies or officials from favoring one religious denomination (or one sect within a religious denomination) over another. *Id.* at 1084–85. Nevertheless, these First Amendment rights may be subjected to reasonable restrictions and limitations attendant to the prison setting, *Bell v. Wolfish*, 441 U.S. 520, 549–51 (1979); in particular, a deprivation alleged to offend the Free Exercise Clause will prove valid if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78,

89 (1987); *Maye*, 915 F.3d at 1083.[1] Similarly, RLUIPA "prohibits state and local governments[2] from placing a 'substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling governmental interest' and does so in the 'least restrictive' way." *Haight v. Thompson*, 763 F.3d 554, 559 (6th Cir. 2014) (quoting 42 U.S.C. § 2000cc-1(a)). In order to state a claim for a RLUIPA violation, an inmate must allege that his "request for an accommodation [is] sincerely based on a religious belief" and that the defendant's "policy substantially burdened that exercise of religion." *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015); *Cavin v. Mich. Dep't of Corrs.*, 927 F.3d 455, 458 (6th Cir. 2019).

In the Complaint and attached documents,[3] the plaintiff states that he was denied the right to participate in the Eid feast on April 22, 2023, and that he and his fellow Nation of Islam adherents were denied permission to have a Saviour's Day Feast on February 27, 2023. (Doc. No. 1 at 4; Doc. No. 1-2 at 1–2.) As a result, while "[t]he Muslims are allowed two relig[i]ous feast[s] a year," "[t]he Nation of Islam [was] denied both" in 2023. (Doc. No. 1-2 at 2.) The plaintiff alleges that these denials infringed upon his sincerely held religious beliefs, defined as his "view of his relations to his creator, and to the obligations they impose of reverence of His being and character, and of obedience to His will." (Doc. No. 1-1 at 4.) The plaintiff also alleges that the denial of these

---

[1] The Sixth Circuit in *Maye* noted that it had not yet resolved the question of whether *Turner*'s test for relation to legitimate penological interests applies to an Establishment Clause claim, or whether official policies or decisions claimed to infringe rights under that clause must survive the higher bar of strict scrutiny. *Maye*, 915 F.3d at 1085.

[2] RLUIPA's prohibitions also apply to "any other person acting under color of State law," 42 U.S.C. § 2000cc-5(4)(A)(iii), a category that includes private companies performing the traditional state function of operating a prison. *Pleasant-Bey v. Tennessee*, No. 3:19-cv-00486, 2020 WL 707584, at *6 (M.D. Tenn. Feb. 12, 2020).

[3] In screening a complaint under the PLRA, the court may consider grievances and other items attached to the complaint. *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002, at *2 (6th Cir. May 23, 2018) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (explaining that a district court evaluating whether a complaint fails to state a claim may consider "any exhibits attached" to the complaint)).

5

feasts did not appear to have anything to do with "legitimate goals of maintaining prison order, discipline, safety or security threats," and that TTCC officials did not provide a reason for denying them. (*Id.* at 3–4.)

Under *Maye v. Klee*, *supra*, and for purposes of initial review, these allegations are sufficient to plausibly claim relief under the First Amendment. The Sixth Circuit in *Maye* considered allegations that are not materially distinguishable from those before this court and determined (1) that a Muslim inmate prevented from participating in Eid without any valid penological justification stated a Free Exercise Clause claim, and (2) that the denial of such participation to a Nation of Islam member—while members of the majority sect of Islam were permitted to feast—stated an Establishment Clause claim. *Maye*, 915 F.3d at 1083–85. Relying on precedent related to the denial of inmates' requests to participate in a Passover Seder, *Whitney v. Brown*, 882 F.2d 1068 (6th Cir. 1989), the Sixth Circuit determined that Eid is to Muslim inmates as Passover is to Jewish inmates—"an especially critical and very special" occasion for a ceremonial meal, "even though the ceremony only lasts 'a few hours once a year.'" *Maye*, 915 F.3d at 1083 (quoting *Whitney*, 882 F.2d at 1073). The denial of an inmate's ability to participate in such ceremonial feasts without justification, or while allowing other inmates in a different sect to do so, therefore runs afoul of the First Amendment. In light of this controlling authority, the plaintiff's First Amendment claims will proceed for further development.

The plaintiff's RLUIPA claim will also survive initial review, as his allegations are sufficient at this early stage to plausibly establish the two components of that claim: that his requests to hold a Saviour's Day Feast and attend the Eid feast were (1) based on his sincerely held religious beliefs, which were (2) substantially burdened when those requests were denied. *See Cavin*, 927 F.3d at 458 (describing the plaintiff's burden to establish these two components, before

6

the burden shifts to the government to show that its decision furthers a compelling interest and uses the least restrictive means to do so). Accordingly, the plaintiff's claim for injunctive relief pertaining to policies around religious feasts at TTCC (Doc. No. 1 at 4) will proceed for further development, pending the determination of whether the deprivations he alleges are ongoing. *See Heyward v. Cooper*, 88 F.4th 648, 656 (6th Cir. 2023) (finding that "RLUIPA doesn't permit money-damages claims against state prison officials in their individual capacities," and claims to injunctive relief are subject to dismissal as moot if "a present or future injury" is not alleged).

## II. CONCLUSION

As explained above, the Complaint states nonfrivolous claims against the TTCC Warden, Assistant Warden Norman, and Chaplains Fletcher and Beaver.[4] The docket shows that the plaintiff has presented appropriate summonses to the Clerk for signature and seal. (Doc. No. 3-1 at 1–2, 4–5, 7–8, 10–11.) Accordingly, pursuant to Federal Rule of Civil Procedure 4(b), **PROCESS SHALL ISSUE** to the plaintiff for service on the defendants.

It is the plaintiff's responsibility to ensure that each defendant is served with a summons and a copy of the Complaint. Fed. R. Civ. P. 4(c)(1). Under Rule 4(m), the plaintiff generally has 90 days to complete such service, but he may request additional time if he shows "good cause." Fed. R. Civ. P. 4(m). The plaintiff may also request that service be made by the United States Marshal, upon payment of a fee. Fed. R. Civ. P. 4(c)(3).

Defendant Blackwell is **DISMISSED** from this action.

In light of the foregoing, the plaintiff's recent motion to ascertain status (Doc. No. 8) is **GRANTED**.

---

[4] The court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude any defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge